IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

WALTER LEE BROWN,

        Plaintiff,

                                              6:13-CV-01518-PK

                                              OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

_____

PAPAK, Magistrate Judge:

        Plaintiff Walter Lee Brown filed this action August 28, 2013, seeking judicial review of the Commissioner of Social Security's final decision denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). This court has jurisdiction over plaintiff's action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

Brown argues that by erroneously rejecting medical evidence and erroneously rejecting his testimony regarding the extent of his impairments, the Commissioner failed properly to assess his residual functional capacity after completing step three of the five-step sequential process for analyzing a Social Security claimant's entitlement to benefits, and for that reason erred by finding Brown capable of performing work as a counter clerk or rental clerk at step five of the process.

I have considered all of the parties' briefs and all of the evidence in the administrative record. For the reasons set forth below, the Commissioner's decision is reversed.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation will proceed to the second step.

Page 2 - OPINION AND ORDER

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. § 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). Nevertheless, it is well established that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), *citing Bowen*, 482 U.S. at 153-154. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work." *Id.*, *quoting* S.S.R. 85-28, 1985 SSR LEXIS 19 (1985).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and the fourth steps the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. § 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and continuing basis,[1] despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 416.945(a); *see also* S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof shifts, for the first time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether a person with those characteristics and RFC could perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. If the Commissioner meets her burden to demonstrate the existence in

---

[1] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

significant numbers in the national economy of jobs capable of being performed by a person with

the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the

claimant is found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§

416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits

if the Commissioner fails to meet that burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see*

*also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

## LEGAL STANDARD

A reviewing court must affirm an Administrative Law Judge's decision if the ALJ applied

proper legal standards and his or her findings are supported by substantial evidence in the record.

*See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193

(9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a

preponderance; it is such relevant evidence as a reasonable person might accept as adequate to

support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing*

*Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The court must review the record as a whole, "weighing both the evidence that supports

and the evidence that detracts from the Commissioner's conclusion." *Id., quoting Reddick v.*

*Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The court may not substitute its judgment for that of

the Commissioner. *See id., citing Robbins*, 466 F.3d at 882; *see also Edlund v. Massanari*, 253

F.3d 1152, 1156 (9th Cir. 2001). Moreover, the court may not rely upon its own independent

findings of fact in determining whether the ALJ's findings are supported by substantial evidence

of record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), *citing SEC v. Chenery*

*Corp.*, 332 U.S. 194, 196 (1947). If the ALJ's interpretation of the evidence is rational, it is

Page 5 - OPINION AND ORDER

immaterial that the evidence may be "susceptible [of] more than one rational interpretation."

*Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), *citing Gallant v. Heckler*, 753 F.2d

1450, 1453 (9th Cir. 1984).

## SUMMARY OF ADMINISTRATIVE RECORD[2]

Brown was 43 at the time of the hearing. Tr. 47.[3]  He attended school through the eighth

grade, and has received no subsequent formal education or vocational training. *Id.*  According to

the evidence of record, prior to his claimed amended disability onset date of July 22, 2009,

Brown had no substantial gainful activity.

### A. The Medical Record

Brown was seen in the emergency room on January 3, 2008, with chest pain, cough and

shortness of breath over the previous three days. Tr. 218.  A chest xray showed three calcific

densities of uncertain significance.  He was prescribed Proventil, Zithromax, and Vicodin.  Tr.

219.

A February 14, 2008 echocardiogram showed a moderately enlarged right atrium, with

severe regurgitation of the pulmonic valve and the tricuspid valve.  Tr. 208-09.

On August 21, 2008, Brown was seen in the emergency room for heart palpitations.  Tr.

203.  Alan Garvin, M.D., examined Brown on November 25, 2008 for complaints of chest

pressure radiating to the left side occurring daily, shortness of breath on exertion and palpitations

with shortness of breath occurring daily, and leg and hip pain and cramps. *Id.*  Dr. Garvin found

---

[2]  The following recitation constitutes a summary of the evidence contained within the
Administrative Record, and does not reflect any independent finding of fact by the court.

[3]  Citations to "Tr." refer to the page(s) indicated in the official transcript of the
administrative record filed herein as Docket No. 12.

"a slight bit of weakness in the right upper extremity," and assessed chest pain and rule out ischemic heart disease. Tr. 205. Dr. Garvin noted the patient used methamphetamines. An electrocardiogram was abnormal. Tr. 212.

On November 27 Brown was seen in the emergency room for the sudden onset of low back pain. Tr. 250. Xrays of the lumbar spine showed minimal degenerative changes. Tr. 253. He was prescribed Vicodin. On December 18, 2008, Brown underwent a stress test for dizziness and fatigue, and was transferred to the emergency room because of an atrial flutter. Tr. 289. He received radiofrequency ablation and was discharged on December 20 with nitroglycerin, aspirin, warfarin, Metoprolol and Norco. Tr. 290. On December 22 Brown was seen in the emergency room with chest pain. Tr. 262.

On January 9, 2009, Brown reported easy bruising and pain in his legs. Zoloft was prescribed. Tr. 389. A January 20, 2009 MRI of the cervical spine showed C6-7 borderline central stenosis, mild foraminal stenosis secondary to broad-based central disc extrusion spur complex, and bilateral uncovertebral spurring; C5-6 left foraminal stenosis secondary to broad-based central disc protrusion spur complex, with left uncovertebral spurring; C4-5 mild broad-based annular bulge spur complex without significant canal encroachment; and C3-4 mild right foraminal encroachment secondary to broad-based annular bulge spur complex, with minimal retrolisthesis and uncovertebral spurring. Tr. 391.

On February 13 and 20, 2009, Brown reported increasing leg cramps. Tr. 383-84.

On March 10, 2009, Brown was evaluated by Miguel Hernandez, M.D. Tr. 336-340. Dr. Hernandez reviewed medical records and imaging studies, and noted heart disease and loss of function of the right hand. Brown was taking aspirin, Coumadin, Zoloft, metoprolol and

Page 7 - OPINION AND ORDER

nitroglycerin. Tr. 337. Motor strength was 5/5 throughout, and he was able to grip 60 pounds of pressure with the right hand and 120 pounds of pressure with the left hand. Tr. 339. Brown's right hand had diminished sense to light touch over the palm up to the wrist level. Tr. 340. Dr. Hernandez opined that Brown could stand, walk, or sit up to six hours in an eight hour work day, carry 50 pounds occasionally and 25 pounds frequently. Tr. 340. Brown had manipulative limitations of handling, fingering, and feeling of the right hand due to numbness and diminished range of motion. *Id.* He should avoid heights, heavy machinery, and sharp objects.

On March 14, 2009, Brown was admitted to the hospital with chest pain. Tr. 342. In the March 16 discharge summary the diagnosis was "chest pain, coronary artery disease was ruled out, chest pain is secondary to the methamphetamine abuse." *Id.* A March 15 stress test was negative. Tr. 342. A March 17 electrodiagnostic testing of the right arm was normal without evidence of carpal tunnel syndrome, cubital tunnel syndrome, radial nerve neuropathy, myopathy, or cervical radiculopathy. Tr. 419-20.

On April 22, 2009, Sadda V. Reddy, M.D., reviewed Brown's medical records and recommended a light RFC with only occasional fingering with right hand. Tr. 393-400.

On May 17, 2009, Brown was psychiatrically evaluated by Manolito Castillo, M.D. Tr. 373-75. Brown reported limited use of his right hand and arthritis in his lower back. Tr. 373. He said he was unable to walk or stand for extended periods, had no energy, was depressed, and had poor memory and concentration. Brown reported he stopped working in August 2007 due to health problems, and had not had alcohol in two years. Tr. 374. He had not used methamphetamine in nine months and not used marijuana in a year. Dr. Castillo diagnosed

dysthymic disorder and polysubstance dependence, in full sustained remission, and assessed a GAF of 68.   A May 29 urine drug abuse screen was positive for amphetamines.  Tr. 421.

Judith Levinson, Ph.D. completed a Psychiatric Review Technique form on June 3, 2009, and found no substantial mental impairment.  Tr. 422-32.  On June 4 the Administration denied Brown's claim.  Tr. 83.  On August 4 Brown requested reconsideration.  Tr. 93-95.

On September 3, 2009, Brown was seen in the emergency room for chest pain and shortness of breath. Tr. 627.  On December 25 he returned to the emergency room with severe low back pain.  Tr. 647.

On February 8, 2010, Kordell Kennemer, Psy.D., reviewed Brown's records on reconsideration and affirmed the prior mental assessment.  Tr. 445.  The same day Sharon Eder, M.D., reviewed Brown's records and affirmed the physical assessment.  Tr. 446.

On April 27, 2010, Brown requested a hearing before an Administrative Law Judge.  Tr. 99.

On June 20, 2010, Brown was seen in the emergency room for chest pain and dental pain. Tr. 643.

On August 26, 2010, Brown established care with Heidi Beery, M.D.  Tr. 475.  He reported recurrent chest pain, and Dr. Beery noted his history of coronary artery disease and stent placement, and a chronically abnormal EKG showing possible left atrial enlargement, incomplete right bundle branch block, and nonspecific T wave abnormalities.  *Id.*  Dr. Beery prescribed nitroglycerin.

On September 2 Brown reported recurrent chest pain and insomnia, and Dr. Beery diagnosed costochondritis.  Tr. 469.   A September 20 stress test induced lightheadedness, chest

Page 9 - OPINION AND ORDER

pain, dyspnea, and headache. Tr. 500. On December 13 a CT scan of Brown's brain showed an old middle lobe infarct. Tr. 499. On December 23 a Transthoracic Echocardiography Report showed moderate pulmonary insufficiency, a sclerotic aortic valve, mild to moderate pulmonic valvular regurgitation, mild left atrial dilatation, and severe right atrial enlargement. Tr. 490-91.

On September 20, 2011, Robin Rose, M.D. reviewed medical records and examined Brown. Tr. 659-75. Dr. Rose noted evidence of peripheral vascular change in the lower extremities, and a "wide based waddling gait with decreased arm swing, left leg circumducted, mild drag of the right leg and foot." Tr. 669. Dr. Rose noted grip issues with Brown's right hand and stated that subjective and objective findings were consistent. Tr. 670. Dr. Rose concluded that Brown could stand or walk one hour in an eight-hour workday, with breaks as needed due to dyspnea and chest pain, noting Brown was desaturating "with a brief walk around this examiner's office." Tr. 673. Dr. Rose opined that Brown could sit for three hours in an eight-hour day, with breaks every 30 minutes to change position. He could lift or carry ten pounds frequently and 20 pounds occasionally. She listed additional postural and environmental limitations. Dr. Rose concluded Brown would be "unable to tolerate the demands of most workplaces...." Tr. 675.

On November 3, 2011, Michael Villanueva, Psy.D., conducted a neuropsychologic screening assessment with testing indicating borderline intellectual functioning. Tr. 681-88.

On November 5, 2011, Dr. Beery reported chest pain and shortness of breath, with acute back pain and decreased sensation in Brown's right leg. Tr. 467.

On January 3, 2011, Brown was seen again by Dr. Beery who diagnosed sacroiliitis and gave him an injection. Tr. 458. Brown reported chronic low back pain at 9/10, shortness of breath, and depression.

A January 4, 2011, imaging study of the lumbar spine showed a "slight curvature deformity and probable anterior disc protrusion at L3-4." Tr. 454. On January 11 Brown reported an injection helped his pain but he still had pain in his legs. Tr. 455. On January 19 a Transesophageal Echocardiography Report showed severe enlargement of the left atrium and significant bubble penetration from the right to left atrium; the aortic valve was sclerotic. Tr. 482.

On January 7, 2011, Brown saw cardiologist Kartik Mani, M.D. reporting chest pain and dypsnea on exertion. Tr. 483-89. He denied fatigue, but had right leg pain with spasm, and right hand numbness with the inability to make a fist. On January 19 a Transesophageal Echocardiography Report indicated a severe enlargement of the left atrium, significant bubble penetration from the right atrium to the left, a sclerotic aortic valve, and mild central regurgitation of the aortic valve. Tr. 572. On January 26 Dr. Mani found peripheral pulses consistent with arterial disease and mild cardiomegaly. Tr. 560. On February 4 a cardiac CT angiogram revealed a mildly enlarged heart and multiple unusual calcifications of the left atrium though cause and significance were not clear. Tr. 577. On March 4 Dr. Mani reported reduced arterial pulses at all sites in the lower extremities and recommended a right heart catherization. Tr. 550. On March 17 Brown underwent a cardiac catheterization. Tr. 569-71.

On April 4, 2011, Dr. Beery saw Brown for back pain, insomnia, and shortness of breath. Tr. 527. A pulmonary function test on April 7 showed combined obstructive and restrictive lung

Page 11 - OPINION AND ORDER

disease. Tr. 605. On April 8 Dr. Mani reported that arterial pulses were reduced at all sites in the lower extremities. Tr. 542. On April 19 chest imaging showed an enlarged right side of the heart. Tr. 604. Brown was seen in the emergency room on May 23 with nausea and vomiting. Tr. 600.

On July 1, 2011, Dr. Beery recorded increased depression and prescribed Celexa. Tr. 524. Brown reported amitriptyline was helping with the insomnia. Brown saw Dr. Mani on July 22, stating he had not used methamphetamine for two years. Tr. 536. Dr. Mani stated Brown had an atrial septal defect with a small residual leak, right ventricular dysfunction and dilation associated tricuspid regurgitation. Tr. 537.

Brown saw Anthony Glassman, M.D. on July 20, 2011 for low back, right hip and leg pain. Tr. 516. Dr. Glassman noted "gait is a normal reciprocating pattern...Patient can heel walk and toe walk without difficulty." *Id.* Brown was seen in the emergency room on August 5, 2011, for depression. Tr. 586. One week later he returned to the emergency room with homicidal ideation. Tr. 592. He had had three shots of whiskey and a beer.

On November 3, 2011, Michael Villanueva, Psy.D., conducted a neuropsychologic screening assessment with testing indicating borderline intellectual functioning. Tr. 681-88.

On November 5, 2011, Dr. Beery reported chest pain and shortness of breath, with acute back pain and decreased sensation in Brown's right leg. Tr. 467. On November 28 Dr. Beery noted depression and insomnia, and possible PTSD. Brown had not tolerated trials of trazodone or amitriptyline, and she prescribed prazosin and allprazolam. Tr. 710.

On January 10, 2012, Brown was seen for a psychiatric intake assessment. Tr. 707-09. Brown reported increasing nightmares and physical symptoms and a recent suicide attempt attributed to Celexa. A GAF of 48 was assessed. Tr. 709.

Dr. Mani saw Brown on January 30, 2012. Tr. 695-98. Brown reported chest pain with activity, dizziness, fatigue and lightheadedness Tr. 695. Dr. Mani noted Brown may benefit from correction of his pulmonic insufficiency with valve replacement. Tr. 697. Transthoracic Echocardiography Report showed moderate chronic diastolic dysfunction, and severe pulmonic and tricuspid insufficiency. Tr. 699.

On February 10, 2012, Nathaniel Holt, P.M.H.N.P. diagnosed bipolar II disorder and increased anxiety. Tr. 704.

On May 15, 2012, Brown was evaluated at Oregon Health & Science University for dyspnea on exertion. Tr. 728-31. Brown reported his symptoms had worsened over the last several years to where he cannot walk more than a block without resting nor climb more than three-four stairs. Tr. 728. He has daily chest pain, palpitations, and tachycardia. He was prescribed a 30 day event monitor. Tr. 731. On June 20 Brown underwent a coronary angiography. Tr. 748-51.

## B. The Hearing Testimony

On September 13, 2011, a hearing was conducted before an ALJ in connection with Brown's application. Tr. 38-82. Brown, his counsel, and a vocational expert were present. Tr. 38. At the hearing, Brown amended his alleged onset date of disability to July 22, 2009, the date he last used methamphetamine. Tr. 48. Prior to July 22, 2009, Brown used methamphetamine daily. Brown testified he was on disability in the 1990s for alcohol abuse, and drinks a 24-ounce

beer "a couple times a week." Tr. 51.  Between July 2009 and July 2011 Brown smoked three to five marijuana joints daily.  Tr. 53.  He had not smoked marijuana for a couple of years before the hearing.  Tr. 76.

Brown had his first heart surgery at age seven and a half months.  Tr. 55.  He had a second heart surgery at age four, for atrial septal defect.  *Id.*  He is left-handed.  He has fatigue and shortness of breath, and cannot use his right hand very well.  Brown cannot grip with his right hand or make a fist, and he drops things.  He has no feeling in the right hand.  Tr. 57.  He wears slip-on shoes because tying laces is difficult.

Brown stated that a doctor told him he had had a stroke.  Tr. 58.  He had no earnings since 1991, and survives by "the grace of God and my family."  Tr. 63.  He does not do odd jobs because he runs "out of breath too easy, real easy."  Tr. 64.  When he had an ablation in 2008 he "couldn't even walk five feet without running out of breath and getting lightheaded."  *Id.*  He has been experiencing increased lightheadedness and dizziness.

Brown has lived the past several years with his parents and his brother.  Tr. 70.  At the time of the hearing, medications included Bystolic for blood pressure, Flexeril and Norco 5s for his back and leg, Ranitidine for heartburn, aspirin, Amitriptyline for insomnia and anxiety.  Tr. 70-71.  He experiences shortness of breath daily, and does not smoke.  Tr. 71.  He rests a lot, and usually naps for about three hours daily.  Tr. 72.

The VE testified that light exertion jobs existed that required no more than occasional fingering or handling, including counter clerk, rental clerk, and order filler.  Tr. 68.  The VE stated that a person who needed to rest daily for three hours would not be able to sustain employment.  Tr. 77.  The VE said that a person with marked limitation of attention and

Page 14 - OPINION AND ORDER

concentration would not be able to sustain employment. *Id.* Similarly, a person with a marked impairment in maintaining attention for two-hour periods would not be able to sustain employment. A person unable to sustain interaction with the general public would not be able to perform the rental clerk or counter clerk positions. Tr. 78.

On February 24, 2012, the ALJ denied Brown's application. Tr. 12-31. Brown timely requested review of the ALJ's decision, Tr. 8, and the Appeals Council denied his request on July 3, 2013. Tr. 1-7. In consequence, the ALJ's decision of February 24, 2012, became the Administration's final order for purposes of judicial review. *See* 20 C.F.R. § 422.210(a); *see also, e.g., Sims v. Apfel*, 530 U.S. 103, 107 (2000). This action followed.

## SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the Administrative Law Judge found that Brown did not engage in substantial gainful activity at any time following his claimed disability onset date of July 22, 2009. Tr. 14 . He therefore proceeded to the second step of the analysis.

At the second step, the ALJ found that Brown's medical impairments of " history of episodic palpitations secondary to atrial flutter exacerbated by chronic methamphetamine abuse status post radiofrequency ablation in December 2008, and atrial septal defect repairs in 1968 and 1972, with residual septal hypokinesis; tricuspid valve and pulmonary regurgitation; cervical degenerative disc disease with right hand weakness of uncertain etiology but possibly due to cervical radiculopathy; lumbar degenerative disc disease; history of old left middle lobe cerebral infarction; methamphetamine abuse in reported remission since July 22, 2009; cannabis and alcohol abuse; borderline intellectual functioning; auditory processing learning disorder; and

Page 15 - OPINION AND ORDER

depression " were "severe" for purposes of the Act. *Id.* Because the impairments were deemed severe, the ALJ properly proceeded to the third step of the analysis.

At the third step, the ALJ found that none of Brown's impairments was the equivalent of any of the impairments enumerated in 20 C.F.R. § 404, subpt P, app. 1. Tr. 23. The ALJ therefore properly conducted an assessment of Brown's residual functional capacity. Specifically, the ALJ found Brown had the capacity to perform light work, except he should avoid climbing ladders, ropes, or scaffolds. Tr. 25. He is capable of no more than occasional fingering and handling with the right hand and no more than simple routine tasks.

At the fourth step of the five-step process, the ALJ found that Brown had no past relevant work. Tr. 29. At step five, the ALJ relied on the testimony of a Vocational Expert (VE) and determined there were jobs in the national economy that Brown can perform, including counter clerk, rental clerk, and order filler. Tr. 30. On that basis, the ALJ concluded that Brown was not disabled as defined in the Act at any time between December 2, 2008, and February 24, 2012. Tr. 31.

## ANALYSIS

Brown challenges the Commissioner's assessment of his residual functional capacity. Specifically, Brown argues that the Administrative Law Judge improperly weighed the medical evidence and improperly failed to credit Brown's own testimony regarding the severity of his symptoms. Because the first issue is dispositive, the court need not address the credibility issue.

## I.    Medical Opinions

An ALJ may properly reject a treating physician's uncontradicted medical opinion only for "clear and convincing reasons." *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995).

When the treating physician's opinion has been contradicted, however, it may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). This can be done by setting out a detailed and thorough summary of the facts, providing an appropriate interpretation thereof, and making findings. *See Megallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

**A. Robin Rose, M.D.**

Dr. Rose examined Brown and his medical records in September 2010, as set out above. Dr. Rose concluded that Brown was limited to standing and walking one hour, and sitting for three hours in an eight-hour day, with breaks as needed. Dr. Rose found Brown would have significant absenteeism. Tr. 674.

The ALJ gave Dr. Rose's opinion little weight, finding it internally inconsistent and inconsistent with other physician's reports. Tr. 28. The ALJ noted Dr. Rose found Brown was able to transfer from the chair to the examination table without difficulty, sat comfortably and was able to remove his shoes. Tr. 28. The ALJ stated that Dr. Rose's finding of several deficiencies in ambulation were inconsistent with her observation that Brown walked to the examination room without difficulty. *Id.*

Dr. Rose's opinion is not internally inconsistent. She made several observations at the beginning of her report in a section marked "General Appearance & Observations," and then became more detailed when describing "Coordination/Station/Gait." Tr. 668, 669.

The ALJ stated that Dr. Rose's opinion is inconsistent with Dr. Mani's January 2011 note that Brown's "gait and coordination appear to be intact," and Dr. Glassman's July 2011 report

Page 17 - OPINION AND ORDER

that Brown had a normal gait and the ability to toe and heel walk without difficulty. Tr. 487, 517. The fact that Brown's condition waxed and waned is not a basis to reject the physician. The fact that a claimant's condition may wax and wane is recognized by the agency. Social Security Ruling (SSR) 96-7p.

The ALJ said Brown was examined by Dr. Rose to generate evidence for the appeal and not for treatment. Tr. 29. The ALJ said Brown's treating cardiologist failed to identify any restrictions.

"[I]n the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998).

It is true that Dr. Mani did not make a functional capacity assessment. He did state Brown had "relatively complex cerebrovascular and structural issues in the heart." Tr. 498. He noted neurologic changes suggestive of cerebrovascular injury. *Id.* Dr. Mani stated that Brown had "significant" ventricular dysfunction associated with "severe" tricuspid regurgitation and "severe" pulmonic insufficiency. Tr. 697.

The ALJ did not identify clear and convincing or specific and legitimate reasons supported by substantial evidence to give Dr. Rose's opinion little weight.

## B. Michael Villanueva, Psy. D.

Dr. Villanueva found Brown's intellect, verbal comprehension, perceptual reasoning, and processing speed fell within the borderline range. Tr. 683. Brown demonstrated "substantial difficulties" with acquisition of information presented to him auditorily, and his delayed memory score fell within the impaired range. Tr. 684. Dr. Villanueva noted that Brown's cognitive test

Page 18 - OPINION AND ORDER

findings "likely represent optimal functioning" as he had passed symptom validity testing.  Tr. 683.

The ALJ gave "great weight" to Dr. Villanueva.  The Commissioner argues that Dr. Villanueva's findings are accommodated by limiting Brown to simple routine tasks.  As Brown points out, a limit to simple routine tasks may account for his limited intellect, but it does not address his borderline processing speed, difficulty in acquisition of auditory information, and impaired delayed memory.  These limitations were not included in the RFC nor were they included in the hypothetical question to the VE.

On this record, the ALJ's weighing of the medical opinions was not supported by substantial evidence.

## II. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000).  The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision.  *Strauss v. Comm'r,* 635 F.3d 1135, 1138- 39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)).  The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act.  *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for

Page 19 - OPINION AND ORDER

rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart,* 340 F.3d 871, 876 (citing *Bunnell v. Sullivan,* 947 F.2d 871(9th Cir. 2003)(en banc)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

The ALJ's failure to credit the examining providers is erroneous for the reasons set out above. The Vocational Expert testified that, if Dr. Rose's opinion is credited, Brown is unable to maintain employment. Tr. 77.

Accordingly, this matter is remanded for the calculation and award of benefits.

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence. For these reasons, the decision of the Commissioner is reversed and this matter is remanded to the

Page 20 - OPINION AND ORDER

Commissioner pursuant to Sentence Four, 42 U.S.C. § 405(g) for the immediate calculation and

payment of benefits.

IT IS SO ORDERED.

Dated this 24th day of April, 2015.

Honorable Paul Papak
United States Magistrate Judge