IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

WALTER L. BROWN,

Plaintiff,

v.

CAROLYN W. COLVIN,

Defendant.

6:13-CV-1518-PK

OPINION AND ORDER

PAPAK, Magistrate Judge:

Plaintiff Walter L. Brown filed this action against defendant Carolyn W. Colvin, Acting Commissioner of Social Security, on August 28, 2013, seeking judicial review of the Commissioner's decision finding him not disabled for purposes of entitlement to supplemental security income benefits ("SSI") under Title XVI of the Social Security Act. On April 24, 2015, I issued an order reversing the Commissioner's final decision and remanding Brown's petition pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and payment of SSI benefits. Brown moved unopposed for an award of attorney fees pursuant to the Equal Access to Justice Act (the "EAJA") on July 22, 2015, and on July 23, 2015, I granted the motion, authorizing award of fees to Brown pursuant to the EAJA in the amount of $4,537.42.

Now before the court is Brown's unopposed motion (#30), filed pursuant to 42 U.S.C. § 406(b), for approval of payment to his counsel out of his retroactive benefits award of

$49,492.00 the amount of $11,823.25,[1] less payment of any EAJA fees received and less an administrative deduction to be assessed by the Commissioner pursuant to 42 U.S.C. § 406(d). I have considered Brown's moving papers and all of the evidence in the record. For the reasons set forth below, Brown's motion is granted, and payment to Brown's counsel of attorney fees in the amount of $11,114.68 (less payment of any EAJA fees received and less an administrative deduction to be assessed by the Commissioner pursuant to 42 U.S.C. § 406(d)) is approved.

## ANALYSIS

Pursuant to 42 U.S.C. § 406(b), Brown's counsel seeks the court's approval of payment to him of attorney fees out of Brown's retroactive benefits award in the amount of $11,823.25. This amount does not reflect any deduction from the 25% contingency fee to which Brown's counsel is entitled pursuant to her fee agreement with Brown, which counsel asserts she has not received, nor does it reflect any deduction from the contingency amount pursuant to 42 U.S.C. § 406(d). Section 406(b) provides, in relevant part, as follows:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment. . . .

42 U.S.C. § 406(b)(1)(A). By contrast with fees awarded pursuant to the EAJA, a fee-shifting statute, Section 406(b) fees are paid out of the retroactive benefits awarded to the successful Social Security claimant. *See id.* Counsel representing Social Security claimants may not seek compensation from their clients for trial litigation other than through a Section 406(b) fee. *See*

---

[1] Brown characterizes this requested amount as constituting 25% of his retroactive benefits award, but 25% of his retroactive benefits award is in fact $12,373.00.

*id.* In the event that both an EAJA fee is awarded and a Section 406(b) fee payment is approved, the claimant's counsel must refund to the claimant the amount of the smaller of the two payments. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002). Any Section 406(b) fee must be approved by the court following analysis of its reasonableness before it may be paid. *See* 42 U.S.C. § 406(b)(1)(A).

In *Gisbrecht*, the Supreme Court established that the reasonableness of a Section 406(b) contingency fee is not to be determined primarily by reference to the lodestar method which governs fee-shifting disputes. *See Gisbrecht*, 535 U.S. at 801-802. Instead, to the extent contingency fee agreements do not provide for fees exceeding 25% of claimants' retroactive benefits, their terms are fully enforceable subject only to the court's review "to assure that they yield reasonable results in particular cases." *Id.* at 807. It is the claimant's counsel's burden to establish the reasonableness of the calculated fee. *See id.*

In assessing the reasonableness of a Section 406(b) fee, courts look first to the contingency fee agreement itself, and then may reduce the resulting award "based on the character of the representation and the results the representative achieved." *Id.* at 808. The claimant's counsel bears the burden to establish the reasonableness of a Section 496(b) fee. *See id.* at 807.

The *Gisbrecht* court provided, as examples of circumstances that could justify a downward reduction, situations in which the attorney was responsible for delay or in which "the benefits are large in comparison to the amount of time counsel spent on the case." *Id.* The court specified that "the court may require the claimant's attorney to submit, not as a basis for satellite litigation, but as an aid to the court's assessment of the reasonableness of the fee yielded by the

fee agreement, a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases." *Id., citing Rodriquez v. Bowen*, 865 F.2d 739, 741 (6th Cir. 1989) (*en banc*).

The Ninth Circuit's *en banc* decision in *Crawford v. Astrue*, 586 F.3d 1142 (9th Cir. 2009), applied the *Gisbrecht* reasonableness analysis. The *Crawford* court affirmed *Gisbrecht*'s holding that it is error to determine the reasonableness of a Section 406(b) fee by the metric of the lodestar method. *See Crawford*, 586 F.3d at 1150.

Here, Brown entered into a contingency fee agreement with his counsel providing for payment of 25% of his retroactive benefits to his attorney. It therefore now falls to me to assess whether $11,823.25.00, or 23.89% of the retroactive benefits award, constitutes reasonable compensation for Brown's counsel under the various factors discussed in *Gisbrecht* and *Crawford*.

**A. Character of the Representation**

**1. Quality of Attorney Performance**

As *Gisbrecht* and *Crawford* both make clear, substandard performance by a legal representative warrants a reduction in a Section 406(b) fee award. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Here, there is no indication in the record that Brown's counsel's representation of her client was in any way substandard. No reduction in the Section 406(b) fee is therefore warranted due to the character of counsel's legal representation.

**2. Dilatoriness**

A Section 406(b) award may properly be reduced if any delay in proceedings is properly attributable to the claimant's counsel. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at

1151. Here, Brown's counsel sought and received a 101-day extension of the deadline for filing the opening brief and a 15-day extension of the deadline for filing a reply memorandum due, in each case, to "a combination of press of business and personal matters." Although there was no impropriety in seeking an extension of court deadlines attributable to challenges in workload management or even (as in connection with the reply memorandum) to accommodate personal vacation time, such extension did occasion delay in the final outcome of review proceedings for which the attorney was squarely responsible, warranting a commensurate reduction under *Gisbrecht*. Moreover, although there was similarly nothing inherently unreasonable about the request for extension itself, I find under the court's inherent authority and obligation to evaluate the reasonableness of fee awards, *see Gisbrecht*, 535 U.S. at 808, *see also Crawford*, 586 F.3d at 1149, that it would nevertheless be unreasonable for Brown's attorney to benefit financially at Brown's expense from a delay caused by the attorney's difficulties in managing the workload she elected to bear and/or by the attorney's personal affairs.[2]

But for the attorney-attributable delay, Brown would have had 116 fewer days of past-due benefits, and would have received benefits for those 116 days without a deduction for attorney fees. Those 116 days of benefits would have been compensated at a monthly rate of $733.00, and thus would have been compensated in the total amount of $2,834.27, twenty-five percent of which is $708.57. The requested Section 406(b) fee is therefore reduced by $708.57 on the basis of attorney delay.

**B. Proportionality of Benefits Awarded to Attorney Time Spent**

---

[2] Where extension is sought due to the particular complexity of a case or for the purpose of facilitating settlement negotiations, attorney-requested extensions of time do not warrant reduction under *Gisbrecht*. However, those factors are not at issue here.

The *Gisbrecht* and *Crawford* courts both held that a Section 406(b) award could be reduced if the benefits awarded to the Social Security claimant were out of proportion to the time spent by the claimant's attorney. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Although neither court's opinion provides significant guidance as to how to measure such disproportionality, *Gisbrecht* established, *see* 535 U.S. at 808, and *Crawford* affirmed, *see* 586 F.3d at 1151, that records of attorney time expended and a statement of the attorney's normal hourly fee in non-contingent matters could be considered in this connection, but only as an "aid" in assessing the reasonableness of the award provided in the contingency fee agreement.

As noted above, the *Gisbrecht* and *Crawford* courts made clear that the lodestar method is an inappropriate metric for determining the proportionality of Section 406(b) compensation. *See Gisbrecht*, 535 U.S. at 801-802; *Crawford*, 586 F.3d at 1150. Indeed, considered in isolation, the product of the lodestar calculation can at best be of extremely limited utility in assessing the reasonableness of a contingency fee. The lodestar method of calculating fees is designed for use where it is intended that an attorney be compensated strictly for time expended rather than on the basis of results achieved, milestones reached, or any of the myriad other bases on which clients may permissibly compensate their legal representatives, and where the probability of nonpayment is both low and unrelated to the attorney's ultimate success or failure. By contrast, the method authorized under Section 406(b) is one designed to compensate attorneys commensurately with results achieved, and to take into account the risk of failure, in which case no compensation is available. As a matter of logic, the fact (standing alone) that a fee calculated according to the lodestar method differs from a fee calculated according to a contingency fee agreement is uninformative as to whether the contingency fee might be disproportionate.

Approaching the question from first principles, it is clear that the disproportionality analysis can have nothing to do with the absolute amount of the Section 406(b) fee requested, since that fee is always a maximum of 25% of the retroactive benefits award, and must instead necessarily address primarily the effective requested hourly rate that may be back-derived by dividing the putative contingency award by the number of hours spent in pursuing it. Although that effective requested hourly rate cannot usefully be directly compared to a reasonable hourly fee to determine its proportionality, it is logically defensible to posit that an effective requested hourly rate is not disproportionately high if it is less than or equal to the product of a reasonable hourly rate for non-contingent matters and the reciprocal of the pre-litigation probability that litigation would lead to a favorable result, based on the particular facts presented in a given case.[3] That is, an effective requested hourly rate cannot be disproportionately high if it does not overcompensate an attorney for the risk that attorney assumed at the time the representation was undertaken that the attorney would ultimately receive no compensation for his or her services. An attorney is not overcompensated for such risk if the pre-litigation expected value of the representation – the probability of a favorable result times the compensation that would be received in the event of a favorable result – does not exceed the product of the appropriate hourly rate and the expected number of hours required.

In addition to giving cognizable effect to the *Gisbrecht* court's suggestion that an attorney's normal hourly rate could bear materially on the disproportionality analysis, *see*

---

[3] Thus, if $100 is a reasonable hourly rate of compensation for non-contingent matters, an effective requested hourly rate would not be disproportionate in light of the risk a particular contingency matter presented if, *e.g.*, the effective requested hourly rate did not exceed $400 (or four times the reasonable hourly rate) where the probability of a favorable outcome was 25% (or a one in four chance).

*Gisbrecht*, 535 U.S. at 808, and to the *Crawford* court's suggestion that case-specific risk could be a material factor in assessing the reasonableness of a Section 406(b) fee, *see Crawford*, 586 F.3d at 1152-1153, measuring the relationship between a reasonable hourly fee for non-contingent matters and the effective requested hourly rate by reference to the case-specific risk of an unfavorable result has the benefit of suggesting a potentially useful metric for assessing proportionality: a contingency fee award is disproportionately high where it disproportionately overcompensates for the pre-litigation risk of an unfavorable result. I therefore assess the proportionality of the fee requested in this action to the time expended in litigation by reference to this risk-assessment metric.

Here, Brown's counsel offers evidence that Brown's attorneys expended a total of 23.9 hours in litigating Brown's petition for judicial review; this time does not include time spent preparing the motion for 406(b) fees. Compensation for 23.9 hours work in the amount of $11,823.25 in a non-contingency context would reflect an hourly rate of $494.70. Brown's counsel offers no evidence of her normal hourly rate, but I may take judicial notice that the Oregon State Bar Economic Surveys provide information as to rates prevalent in various Oregon legal communities in the years in which survey data are collected, that the legal services at issue here were performed by Kathryn Tassinari, a Eugene-based practitioner, in 2013, 2014, and 2015, that Tassinari has been a member of the Oregon bar since 1980, that the most recent such survey issued in 2012 and provides information as to rates actually charged by Oregon attorneys in 2011, and that, according to the 2012 Economic Survey, the median hourly rate charged by Oregon attorneys with 21-30 years' experience in private practice in 2011 was $250.00. An appropriate method for adjusting the 2011 rates reported in the 2012 Economic Survey for inflation to

produce an estimate of the corresponding rates prevalent in the material legal community in 2013, 2014, and 2015, when Brown's petition for judicial review was litigated, is to multiply the 2011 rates by the federal Bureau of Labor Statistics' reported consumer price index for urban consumers ("CPI-U") for the years in which the fees were incurred, and then to divide the resulting quotients by the reported CPI-U for 2011. I take judicial notice that the Bureau of Labor Statistics has published a CPI-U for the Western states of 227.485 for 2011, of 235.824 for 2013, or 240.215 for 2014, and of 241.770 for the first half of 2015. Adjusting for inflation thus yields constructive reasonable average rates of $259.16 for 2013, $263.99 for 2014, and $265.70 for the first half of 2015.

Because the back-derived rate for the contingency fee is $495, or approximately 1.9 times the constructive reasonable hourly rates for non-contingency work, the requested contingency fee can only can only be disproportionate if, at the time Tassinari undertook to represent Brown, the risk of an unfavorable outcome was clearly lower than approximately 47%. In light of the fact that Brown's medical history included a history of substance abuse, which nearly always increases the risk of an unfavorable outcome in Social Security cases, I do not find that the risk to Tassinari of an unfavorable outcome was clearly lower than 47% at the time she undertook Brown's representation. I therefore conclude that reduction is not warranted in connection with the proportionality factor, taking into account the case-specific risks and the appropriate normal hourly rate for non-contingent matters.

**C. Appropriate Fee**

For the foregoing reasons, I find that the contingency fee agreement in place between Brown and his counsel is within the statutory limits provided in 29 U.S.C. § 406(b), and that the

fee provided therein is reasonable. The motion for approval of Section 406(b) fees is therefore granted, and payment to Brown's counsel of $11,114.68 (less payment of any EAJA fees received and less an administrative deduction to be assessed by the Commissioner pursuant to 42 U.S.C. § 406(d)) from Brown's retroactive fee award is approved.

## CONCLUSION

For the reasons set forth above, the motion (#30) for Section 406(b) attorney fees is granted, and payment to Brown's counsel of $11,114.68 (less payment of any EAJA fees received and less an administrative deduction to be assessed by the Commissioner pursuant to 42 U.S.C. § 406(d)) from Brown's award of retroactive SSI benefits is approved.

Dated this 25th day of September, 2015.

Honorable Paul Papak
United States Magistrate Judge